In this case the plaintiff recovered by the Decree of the Court, a family of negroes, which the Defendant, as Administrator of John Rainsford, had held for nineteen years, or upwards, with an accompanying order, that the Defendant should account to the Plaintiff for the hire of ne-groes.
The case has been before the Commissioner twice, and before the Appeal Court once, upon the question of hire.
At the June Term, 1840, the Commissioner made his Report, to which both parties filed objections, and the Chancellor pronounced the following Decree:
This cause has been twice heard by the Court of Appeals. The only remaining question, presented by the exceptions of both parties to the Commissioner’s Report, is the amount to be allowed for the use of the complainant’s negroes, from 1818 to 1837, while they were in the possession of the defendant. This point was distinctly submitted to the judgment of the Appeal Court, and it is only now important to ascertain how far the Commissioner has applied the principles of the decree to the evidence adduced.
*17 In the Circuit decree of Chancellor Harper, it is said, “ this is not like the case of one who has obtained possession of property by force or fraud, and who is, therefore,, chargeable with all the income which might have been made from it. It is enough to say that he shall be charged as if he had discharged his trust in honesty and good faith.” After adverting to the advantage of keeping the negroes together, instead of hiring them out annually to the highest bidder, the Chancellor adopted what has been called the £10 rule, as properly applicable to the case. In revising this decree, the Court of Appeals declare (Rice Eq. Rep. 369,) “ that this, and every other arbitrary rule, has been wholly repudiated. The obligation imposed on a trustee is, that he shall manage the trust estate in the same manner that a discreet man would manage his own. concerns ; and he is accountable if he neglects to perform his duty. He is not permitted to take any profit to himself, and having discharged his duty faithfully, he is accountable for no more than is actually made. If he be wanting in the performance, he must account for what he ought to have made; and it will be seen at once, that no arbitrary rule can ascertain the extent of his liability, and no case can furnish a rule for another. There is no possible way of ascertaining it by an other means, than those that arise from the particular circumstances of each case.” The Court afterwards remarks, that the necessity of resorting to this secondary and less satisfactory testimony, arises from the neglect or omission of the trustee to keep such accounts as would show the actual value, and adds that “ of course, any fact or circumstance calculated to. show the real value, is admissible.”
It cannot be doubted, that the first object should be to ascertain what has been made from the trust propertyi This is not, it is true, conclusive. As is said by the Chancellor, at a former hearing, “if the executor, through gross neglect, had failed to make crops, or to make sufficient ones, he might be charged by the same rule, (£10 rule,) though he had returned regular accounts.” And so, I suppose, if the executor has not kept regular accounts, but it can be ascertained, by other testimony, what has been made, and that the trustee has exercised the skill *18 and diligence which a discreet man would exhibit in the' management of his own concerns, the responsibility of the trustee would be limited to the amount actually realized.
An anecdote is related by Roger North, of the Lord Keeper Guilford, that his aunt, Lady Dacres, having to account for the use of an estate to her eldest son, when he became of full age, the Lord Keeper advised her to have “a manager appointed, and she to answer only for what money she actually received; and as things fell out afterwards,” continues the biographer, the “ reasons for this precaution appeared most lively; for it preserved her, (who kept no good accounts,) from oral testimonies of imaginary values, which had pinched her to the quick, if she had not had that defence.” “That course in Chancery,” adds North, “is more common of late, than it was then; and it fell not under every one’s cap to give so good advice.”
Evidence as to imaginary value, is properly admissible only in the absence of evidence as to the actual value. When a trustee keeps no regular accounts, or being called on, renders none which is satisfactory, he compels the Court to resort to testimony which is necessarily, in some sort, speculative, and may mislead, and he has no right to complain, if, as in most cases, it should pinch him to the quick. But it is not resorted to as a mode of punishment, but a rule of evidence; and the omission to keep, or return, regular accounts, does not increase the measure of his responsibility, if, in any way, the actual value can be shoicn, or rather the actual profit can be ascertained.
If the trust estate consisted of a planting interest, the account sales of the factor would be more satisfactory proof of the product for a series of years, than any speculative opinion, as to what might have been made, or positive testimony, as to the crops on an adjoining plantation.
But large crops are only one evidence of judicious management — certainly important — not always conclusive. The skill and fidelity of the trustee must be approved, as Well by the general condition of the property, as the intermediate profits. The testimony in every case must, then, necessarily depend on its own circumstances.
Thomas Rainsford took possession of the Complainant’s (James Rainsford’s) negroes, in 1818. All the negroes on *19 the plantation were treated as his own. Those belonging to James Rainsford then consisted of one family, of five ip. number. The hire of the whole is estimated by the Commissioner at seventy dollars, three of the number being children. They were in charge of the defendant until 1837. Under the decretal order of this Court, June Term., 1837, directing the defendant to deliver up the negroes, with their increase, and account for their hire, the defendant delivered over to the complainant ten negroes, whose annual hire is estimated by the commissioner at $450, and his counsel proposed, on the reference, (says the Commissioner,) to allow the sum of $3,340 84 cts., for the intermediate profits. Unless it could be shown that a discreet man, in the management of his own concerns, could, under similar circumstances, have done more, it would seem, from the principles of the Appeal decree, that this would be a satisfactory account. But this was not all. It was attempted to shew, with reasonable accuracy, what were the entire profits of all the property in the possession of Thomas Rainsford, and the proportion to which the complainant was entitled; and the Court agrees with the commissioner, in his conclusion from the testimony, that; the above sum was not only as much “ as the defendant actually realized from the slaves, but that it is nearer the justice of the case, than can be attained by any other practicable mode of adjusting the accounts between the parties, according to the evidence.” The commissioner declined, however, to adopt these views ; not, as he intimate's, from any want of conviction of ; their justice, but because “ he must be governed by those rules of evidence which, from their universal application, may be resorted to in all similar cases.” The Court does not perceive, that any rule of evidence would have been violated by the Commissioner, in following the convictions of his mind. Supposing Rainsford to be a discreet man, he is responsible only for what he actually made. This is ' the primary object of •enquiry. If, from accounts kept by the party, and returns made, or from his factor’s books, or from any other circumstances, the mind is satisfied as to the actual profits, that would supercede any further enquiry, imless neglect or .other infidelity be established. In ordinary cases, a trus *20 tee keeping no accounts would, as has been intimated, find great difficulty in making his proof. Presumptions would be against him; and in the absence of satisfactory and positive testimony, he must be content to be held responsible for the price at which slaves would hire publicly, or if they are employed on a plantation, (as in Lyles vs. Lyles,) to abide by “ the estimate of experienced planters, with reference to the condition of the negroes, and the quality of the land on which they are employed“ any fact or circumstance,” say the Court, “ calculated to shew the real value, is. admissible.”
Fortunately perhaps for the trustee, in this case, (and it may be, for justice,) the commissioner has been able to collect from the testimony, facts and circumstances which have satisfied his mind as to the actual amount realized by Thomas Rainsford, from the usufruct of his testator^ entire estate; and the proportion to which the Complainant is entitled is then adjusted with little comparative difficulty or uncertainty. Among the principal data from which the conclusions of the Commissioner are drawn, are the original condition of Thomas Rainsford, his well known habits, and the amount of property which he had accumulated, ascertained by actual appraisement. Under some circumstances, such testimony might be too vague. In the case under consideration, and in solving the enquiry, what was made by Thomas Rainsford, it seems to the Court more satisfactory than the proof offered of what might have been the annual hire, or the estimate of experienced planters, as to what might have been made in a series of years. When a similar case arises, the Court would regard such testimony as not only competent, but better calculated to induce belief, even on this enquiry. But, (as is declared by the Court of Appeals,) in forming an estimate of the manner in which the trustee has discharged his duty, the annual profits is not the only subject of investigation. What evidence can satisfy the Court that these negroes could have been annually hired out by Thomas Rainsford, to the highest bidder, and that at the expiration of the time, he could have rendered to the complainant a more favorable account of his stewardship, his five negroes *21 having produced other five, and an amount m money nearly equal to as many more 1
BauskcU for the motion,
Wardlmo <fe Wanllaw, contra.
It seems to the Court, that there is error in the report of the Commissioner, in this respect, and that it must he recommitted, with instructions to conform the account to the principles of this decree, and it is so ordered.
From this decree of his Honor, the complainant appealed, upon the subjoined grounds :
1st. Because the Court is understood as laying it down, as a rule for the commissioner, that the complainant is only entitled to a rateable proportion of what was made by Thomas Rainsford, during the time he had the possession of the property. Whereas, it is submitted, that he ought to account for whatever he could have made, by a diligent use of the property during that time.
2d. If such a rule be applicable in any case, it is not so in this, for the defendant held the possession of the negroes, by fraudulently withholding from the complainant the knowledge that they were bequeathed to him. He made no return or account to the Ordinary, of the hire of these negroes, or of any other part of the estate, or to this Court upon the filing of the bill in this case, or upon reference to the Commissioner.
3d. Because the defendant has not yet shown how much was made by the whole property, during the time he held the complainant’s negroes ; and therefore, there are no data upon which the commissioner could fix the amount subject to a rateable distribution.